IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANTONIO G. RAMIREZ,

                Petitioner,

v.

LIZZIE TEGELS,

                Respondent.

OPINION and ORDER

14-cv-802-jdp

---

In Kenosha County Case No. 1999CF950, petitioner Antonio G. Ramirez was convicted, after a jury trial, of two counts of first-degree sexual assault of a child, first-degree sexual assault causing great bodily harm, and child enticement. The child victim did not testify at Ramirez's trial, but a police officer and a hospital nurse testified about statements made by the child and the child's mother describing the sexual assaults. Ramirez's lawyer objected on hearsay grounds, but the lawyer did not argue that the out-of-court statements violated Ramirez's right under the Sixth Amendment's Confrontation Clause to cross-examine adverse witnesses. Ramirez's postconviction and appellate counsel likewise did not raise Confrontation Clause arguments.

Ramirez sought postconviction relief in state court, arguing that his postconviction and appellate counsel was ineffective for failing to raise confrontation arguments in light of the United States Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004). The circuit court and Wisconsin Court of Appeals rejected Ramirez's arguments, concluding that the hearsay statements were admissible under the Confrontation Clause precedent that controlled at the time of Ramirez's trial.

Ramirez now seeks a writ of habeas corpus under 28 U.S.C. § 2254, asserting the same Confrontation Clause and ineffective assistance of counsel claims that he raised in the state courts. After the state filed an answer, along with records from the relevant state court proceedings, both parties submitted briefing. Ramirez has also filed additional documents from the state court record that I have considered. Dkt. 27. As explained below, I conclude that Ramirez's claim that postconviction counsel should have raised a confrontation argument under *Crawford* appears to have merit. Because the state failed to adequately address the merits of this claim, however, I will give the state an opportunity to supplement its briefing on this claim. In the interim, I will appoint counsel to represent Ramirez for the remainder of this case.

BACKGROUND

The following facts are taken from the petition and the state court records provided by Ramirez and the state.

**A. Arrest and trial**

Petitioner Antonio G. Ramirez was arrested on September 5, 1999, after his wife reported to the police that she believed Ramirez had sexually assaulted her eight-year-old daughter, Ramirez's stepdaughter. The child later reported to a police officer that when her mother left the house that evening, Ramirez told her to go into her bedroom, that he removed her shorts and underwear, and that he touched her with his penis. The victim also revealed that a vaginal injury that had been surgically repaired in November 1998 was not a bathtub accident, as originally reported, but that Ramirez had caused it.

For the November 1998 assault, Ramirez was charged with first-degree sexual assault of a child under the age of 13 by a person responsible for the child's welfare and first-degree

2

sexual assault causing great bodily harm. For the September 1999 assault and a domestic fight that followed, he was charged with child enticement, first-degree sexual assault of a child under the age of 13 by a person responsible for her welfare, intentionally causing harm to a child (based on allegations that Ramirez attacked his son), battery, false imprisonment, and resisting or obstructing an officer.

Ramirez pleaded not guilty and proceeded to a jury trial. At trial, a police officer testified that he had been dispatched to the home of Ramirez's mother-in-law on the night of the assault in September 1999, and that Ramirez's wife had told him that she believed her daughter had been sexually assaulted by her husband, Ramirez. Dkt. 14-27 at 126–27. The officer testified that Ramirez's wife was "very emotional, sad, crying, [and] concerned," *id.*, explained that she had returned home and found that "the door was locked with a chain which was not normal," and that she "had to force the back door open." *Id.* at 127–28. Upon entering, "she saw [Ramirez] coming out of [her daughter's] bedroom pulling up his shorts" and "also saw [her daughter] sitting on the toilet [with] a look on her face." *Id.* The wife reported to the officer that Ramirez had bit her on the shoulder, pushed her, and refused to let her leave, and that her son reported seeing Ramirez with the victim on her bed. *Id.* at 128. The officer explained that he took the wife and the child victim to the hospital. *Id.* at 130. Ramirez's counsel objected to the officer testifying as to what the son reported seeing, but the court overruled the objection. *Id.* at 128.

A nurse who examined the child also testified at trial, describing the child as being "very distraught," "scared," and "very, very frightened." Dkt. 14-25 at 99. According to the nurse, the child told her that Ramirez had sexually assaulted her and that afterward, she went to the bathroom and wiped herself with some tissue and threw it in the wastepaper basket. *Id.* at 105–

3

06. The nurse also testified that the child told her that Ramirez had caused her previous vaginal injury, but that she had not told anyone because Ramirez had threatened to hurt her little brother, mother, or grandmother if she did. *Id.* at 107–08. Ramirez's trial counsel objected to the admission of out-of-court statements of Ramirez's wife and the child victim to the nurse. Dkt. 14-25 at 100, 107–08. The circuit court overruled the objections and concluded that the statements were admissible under Wis. Stat. § 908.03(4) as statements made for purposes of medical diagnosis and treatment. *Id.*

A doctor who examined the child also testified regarding the child's condition, stating that the child's vaginal area was red and irritated and had an abnormal discharge. Dkt. 14-27 at 24. Two doctors also testified about the injury the child victim suffered on November 8, 1998, stating that although the injury had been diagnosed as a "straddle injury" and no sexual abuse report had been made, the injury was "inconsistent with a straddle injury" and was more consistent with sexual abuse. Dkt. 14-26 at 126–27.

Another police officer testified that while Ramirez's wife and stepdaughter were at the hospital, the officer went to their apartment to gather evidence. Dkt. 14-25 at 142. The officer took pictures of the apartment, including a broken latch on the door that the wife had reported breaking, and he recovered a tissue paper from the bathroom trash can, consistent with one the child had described using to wipe herself after the assault. *Id.* The photographs and the toilet paper were admitted into evidence. *Id.* at 8–9. The state also introduced DNA evidence through the testimony of a crime lab forensic scientist, who testified that DNA recovered from the child's underwear and toilet paper matched Ramirez's DNA. Dkt. 14-26 at 107–10.

The state also called Ramirez's mother-in-law and wife as witnesses. During the mother-in-law's testimony, Ramirez's counsel made a hearsay objection to testimony about the wife's

4

statements to her mother on the night of the September 1999 assault. Dkt. 14-25 at 161–177. The court ruled the statements were admissible under the excited-utterance exception to the hearsay rule, Wis. Stat. § 908.03(2). During her testimony, Ramirez's wife recanted all of her previous statements against Ramirez. In particular, she testified that she had lied to the police about seeing Ramirez pulling up his shorts at the door to her daughter's room and had told her daughter to lie about being sexually assaulted. She also testified that she had lied about being attacked by Ramirez and had lied about her son being attacked. Dkt. 14-26 at 51–78. She stated that she had made up the entire incident because she was angry at Ramirez for excessive drinking and being unfaithful and that she wanted him to go to prison, *id.* at 65–68; Dkt. 14-27 at 98, but she denied planting DNA on the victim. Dkt. 14-27 at 98. The court permitted the prosecution to introduce previous statements that Ramirez's wife had made to the police and hospital staff to impeach her trial testimony. Dkt. 14-25 at 9–10.[1]

The jury found Ramirez guilty of the two counts of sexual assault and one count of child enticement, but the jury found him not guilty on all other counts. Ramirez was sentenced to two concurrent 40-year prison terms on two of the sexual assault charges, 30 years of probation on the other sexual assault charge, and a consecutive 10-year sentence on the child enticement charge.

**B. Postconviction and appellate litigation in state court**

The state public defender appointed counsel to handle Ramirez's appeal. Appellate counsel filed a no-merit brief under Wis. Stat. § 809.32, which is Wisconsin's procedure for

---

[1] The victim, Ramirez's stepdaughter, apparently also wrote a letter to the state court recanting her accusations against Ramirez. Dkt. 14-25 at 175. The victim did not testify at trial and her written recantation was not admitted as evidence.

5

implementing *Anders v. California*, 386 U.S. 738 (1967). The Wisconsin Court of Appeals rejected the no-merit brief and remanded the case after counsel failed to file a supplemental report. Dkts. 27-1 and 27-2.

While the no-merit proceeding was ongoing, the United States Supreme Court decided in *Crawford v. Washington*, 541 U.S. 36 (2004), that the Confrontation Clause of the Sixth Amendment requires that a criminal defendant have the opportunity to confront adverse witnesses. Therefore, testimonial statements from a witness unavailable for trial may not be admitted against a criminal defendant unless the defendant had a prior opportunity to cross-examine the witness. *Id.* at 54.

*Crawford* was decided before Ramirez's new postconviction counsel filed a postconviction motion in the circuit court, but postconviction counsel did not raise any argument under *Crawford* or the Confrontation Clause. Postconviction counsel did argue that the trial court erred by admitting the hearsay statements of Ramirez's wife and the child victim based on hearsay exceptions. Dkt. 14-4 at 37–38. The circuit court denied the motion after a hearing, Dkt. 14-4 at 58, and counsel appealed.

On appeal, counsel again challenged the circuit court's decision to allow testimony about hearsay statements of Ramirez's wife and the child victim. Dkt. 14-4 at 37–38. But appellate counsel did not argue that the out-of-court statements failed the confrontation test in *Crawford* or that trial counsel was ineffective for failing to object to admission of these statements on confrontation grounds. Dkt. 14-4. The Wisconsin Court of Appeals affirmed the conviction and the circuit court's order denying postconviction relief. Dkt. 14-7. As to the hearsay claim, the court of appeals concluded that the circuit court properly exercised its discretion in admitting the wife's and victim's out-of-court statements as "excited utterances,"

and rejected Ramirez's argument that the exception did not apply because too much time had passed between the wife's discovery of the assault and the wife's and victim's statements to the police, medical personnel, and Ramirez's mother-in-law. Dkt. 14-7 at 8–10. The Wisconsin Supreme Court denied Ramirez's petition for review. Dkt. 14-10.

Ramirez then filed a pro se petition for a writ of habeas corpus under *State v. Knight*, 168 Wis. 2d 509, 484 N.W.2d 540 (1992), in the Wisconsin Court of Appeals, raising several claims of ineffective assistance of postconviction and appellate counsel, including that postconviction counsel should have raised a *Crawford* argument with respect to the out-of-court statements of the victim and Ramirez's son, because *Crawford* was decided before his conviction was finalized on appeal. Ramirez also argued that postconviction counsel should have argued that trial counsel was deficient in not raising a confrontation objection to the admission of the hearsay statements of his son and the victim. Dkt. 14-11 at 13–24. The court of appeals denied the petition on grounds that his petition belonged in circuit court because Ramirez's claims of ineffectiveness concerned counsel's failure to make arguments in the postconviction motion she filed in circuit court. Dkt. 14-12 at 5.

In accordance with the court of appeals' decision, Ramirez filed a pro se postconviction motion under Wis. Stat. § 974.06 in the circuit court, arguing that postconviction counsel was ineffective for "failing to bring a postconviction motion before the trial court alleging that defendant's right to confront his accusers was violated" when the trial court admitted out-of-court statements of the victim to various individuals. Dkt. 23-2 at 64. Ramirez relied primarily on *Crawford*, 541 U.S. 36, in arguing that his constitutional right to confront his accusers had been violated. *Id.* at 66. Ramirez also argued that postconviction counsel was ineffective for

7

failing to argue that trial counsel was deficient for not objecting to the admission of hearsay statements on confrontation grounds. Dkt. 23-2 at 69.

The circuit court denied the motion without an evidentiary hearing in a February 21, 2013 decision and order. Dkt. 23-2 at 18–23. The court noted that Ramirez was arguing that postconviction counsel was ineffective both for (1) failing to raise an argument under *Crawford*, and (2) failing to argue that trial counsel should have made a Confrontation Clause argument. *Id.* at 21. The court concluded that because most of the out-of-court statements at issue were admitted as "excited utterances or for the purpose of medical diagnosis or treatment," they were not "testimonial in nature" and did "not offend the confrontation clause." *Id.* at 22. The court further concluded that any statements that were testimonial in nature were "cumulative," such that their admission "was harmless error in light of other overwhelming evidence of the defendant's guilt." *Id.* at 23.

Ramirez appealed, Dkt. 23-2 at 1–16, and the court of appeals affirmed on May 26, 2014. Dkt. 14-19. The court concluded that *Crawford* did not apply to Ramirez's ineffective assistance of counsel claims because it was decided after Ramirez's trial and did not apply retroactively on a motion brought under Wis. Stat. § 974.06. *Id.* The court further concluded that under the law in effect at the time of Ramirez's trial, the hearsay statements did not violate Ramirez's confrontation rights. *Id.* at 3–5. Ramirez filed a petition for review, arguing, among other things, that the court of appeals failed to address whether postconviction counsel should have raised a *Crawford* claim, independent of whether trial counsel was ineffective, in light of the fact that *Crawford* was decided while Ramirez's case was pending on direct appeal. Dkt. 14-20 at 12. The Wisconsin Supreme Court denied Ramirez's petition for review. Dkt. 14-22.

Ramirez filed his habeas petition in this court on November 20, 2014.

8

ANALYSIS

In his habeas petition, Ramirez raises four grounds for relief, all of which are based on his Sixth Amendment right to confront his accusers. Specifically, Ramirez seeks relief on the grounds that: (1) the admission of out-of-court statements by the assault victim and her brother violated Ramirez's right to confront his accusers under *Crawford v. Washington*, 541 U.S. 36 (2004); (2) trial counsel provided ineffective assistance by failing to challenge the admission of the hearsay statements on confrontation grounds; (3) postconviction counsel was ineffective for failing to raise the confrontation arguments during postconviction proceedings and on direct appeal; and (4) the state courts violated Ramirez's right to due process by denying his Wis. Stat. § 974.06 motion alleging ineffective assistance of postconviction counsel without conducting an evidentiary hearing.

The state argues that claims 1 and 2 are unexhausted and procedurally defaulted, because Ramirez never presented a confrontation claim to the state courts that was independent of his claim that postconviction counsel was ineffective. The state also argues that Ramirez is not entitled to relief on claim 4, because the state court's decision not to hold on evidentiary hearing on Ramirez's claim of postconviction counsel ineffectiveness was a state law decision that cannot be challenged in a federal habeas case.

After reviewing the state court record, I conclude that the state appears to be correct that Ramirez never raised Confrontation Clause claims outside the context of challenging postconviction counsel's performance. Specifically, he first raised his confrontation claims when he filed his *Knight* petition challenging the effectiveness of postconviction and appellate counsel. After his *Knight* petition was dismissed as procedurally improper, Ramirez filed his pro se motion under Wis. Stat. § 974.06 making the same challenges to postconviction counsel's

9

performance. Thus, it appears that Ramirez's claims 1 and 2 are barred by the doctrine of procedural default. *See* 28 U.S.C. § 2254(b)(1)(A); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). The state also appears to be correct that Ramirez's claim 4 raises an issue of state procedural law that may not be challenged on federal habeas review. *See Arnold v. Dittmann*, 901 F.3d 830, 835 (7th Cir. 2018) ("[E]rrors of state law are not cognizable on habeas review.").

However, even if I assume that Ramirez cannot obtain relief on claims 1, 2, or 4, claim 3 appears to have merit. In claim 3, Ramirez contends that postconviction counsel was ineffective within the meaning of *Strickland v. Washington*, 466 U.S. 668 (1984), for failing to raise Confrontation Clause arguments in a postconviction motion or on direct appeal. Ramirez's claim of postconviction counsel ineffectiveness has two parts. First, he argues that postconviction counsel should have challenged trial counsel's failure to object to the use of the out-of-court statements of his wife, son, and the child victim on confrontation grounds. Second, Ramirez argues that postconviction counsel should have raised a *Crawford* argument in the trial court and on direct appeal, independent of any claim that trial counsel's performance was ineffective. Ramirez contends that the introduction of the out-of-court statements at trial was clearly barred by the rule announced in *Crawford*, 541 U.S. 36, that out-of-court statements cannot be admitted against a criminal defendant unless the declarant is unavailable and the defendant had a prior chance to cross-examine the declarant.

Under *Strickland*'s familiar two-pronged standard, Ramirez must show both that his counsel's performance was deficient and that he was prejudiced as a result. *Harrington v. Richter*, 562 U.S. 86, 104 (2011). To demonstrate deficient performance, Ramirez must show "that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466

U.S. at 687–88. "This means identifying acts or omissions of counsel that could not be the result of professional judgment." *Sussman v. Jenkins*, 636 F.3d 329, 349 (7th Cir. 2011) (internal quotation marks and citations omitted). To demonstrate actual prejudice, Ramirez must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 499 U.S. at 694.

Because the Wisconsin Court of Appeals decided that postconviction counsel's performance was not deficient, my review of the *Strickland* analysis is subject to the deferential standard of review under § 2254(d)(1). *Sussman*, 636 F.3d at 350–51. Under § 2254(d)(1), "The bar for establishing that a state court's application of the *Strickland* standard was 'unreasonable' is a high one, and only a clear error in applying *Strickland* will support a writ of habeas corpus." *Id. See also Richter*, 562 U.S. at 104 ("[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.").

The Wisconsin Court of Appeals rejected Ramirez's claim of ineffective assistance of postconviction counsel on the ground that, had trial counsel made a Confrontation Clause objection to the out-of-court statements, it would have been rejected by the trial court based on the governing law in effect at the time of Ramirez's trial. Dkt. 14-19 at 4. As the court of appeals correctly noted, the governing Confrontation Clause precedent at the time of Ramirez's trial was *Ohio v. Roberts*, 448 U.S. 56 (1980). Under *Roberts*, the Confrontation Clause barred the use of hearsay statements if the declarant did not testify at trial, unless (1) the declarant was unavailable, and (2) the statement bore adequate "indicia of reliability." *Id.* at 66–67. Reliability could be inferred under the *Roberts* test if the hearsay evidence fell within a "firmly

rooted hearsay exception" or the statement was accompanied by "particularized guarantees of trustworthiness." *Id.*

Applying the test from *Roberts*, the Wisconsin Court of Appeals concluded that any objection by trial counsel to the hearsay statements of the victim, the victim's mother, and the victim's brother would have been unsuccessful. Dkt. 14-7 at 9–10. The trial court admitted the statements under the "excited utterance" and "medical examination" exceptions to the hearsay rules, and the United States Supreme Court has concluded that both exceptions are firmly rooted hearsay exceptions. *White v. Illinois*, 502 U.S. 346, 350 n.8 (1992). Further, when the declarant's statement qualifies under these exceptions, proof of unavailability is not required. *Id.* at 355–57.

With respect to Ramirez's claim that postconviction counsel should have challenged trial counsel's failure to raise confrontation objections, I conclude that the court of appeals' analysis is not an unreasonable application of *Strickland* or the controlling Confrontation Clause precedent. The court of appeals explained why the timing and context of the statements satisfied the exited utterance exception statements and were admissible under state and federal law. Dkt, 14-7 at 9–10. *See also White*, 502 U.S. at 349–50 (statements of child sexual assault victim to babysitter, mother, police officer, and emergency room personnel made between a few minutes and several hours of assault were admissible under spontaneous declaration and medical examination exceptions to hearsay rule).

However, the court of appeals appears to have unreasonably applied federal law when rejecting the second part of Ramirez's claim, based on postconviction counsel's failure to raise a *Crawford* argument regardless of trial counsel's failure to do so. As Ramirez argued repeatedly in the state courts, *Crawford* was decided before his conviction became final on direct review

and thus, the rule in *Crawford* should have been applied to Ramirez's case. *See Griffith v. Kentucky*, 479 U.S. 314, 322 (1987) ("[F]ailure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication."). The court of appeals rejected this argument on the grounds that "the Supreme Court has held that *Crawford* does not apply retroactively in a collateral attack upon a conviction," and because Ramirez's § 974.06 petition was a "collateral attack," he could not raise a *Crawford* claim. Dkt. 14-19 at 4. The court of appeals cited *Whorton v. Bockting*, 549 U.S. 406 (2007), to support its conclusion that *Crawford* does not apply retroactively on collateral review.

The court of appeals' reliance on *Whorton* was misplaced. The court of appeals appears to have interpreted *Whorton* as precluding petitioners from bringing *Crawford* claims in any motion that constitutes a "collateral" proceeding. But that is not what *Whorton* says. *Whorton* states that *Crawford* does not apply retroactively to cases that were already final and thus, on collateral review, when the *Crawford* decision was issued. *Whorton*, 549 U.S. at 416. However, *Whorton* makes it clear that *Crawford* applies to cases such as Ramirez's that were still on direct review when *Crawford* was decided. *Id.* Nothing in *Whorton* precludes a petitioner from raising a claim of ineffective assistance of postconviction counsel based on *Crawford* in a collateral proceeding, so long as the petitioner's conviction was not final on direct review at the time of the *Crawford* decision.

Besides citing *Whorton*, the state has not addressed Ramirez's claim that postconviction counsel should have raised a *Crawford* argument independent of whether trial counsel was ineffective. Notably, the state has not suggested that the out-of-court statements of the victim or Ramirez's son would be admissible under the *Crawford* test. Nor has the state argued that

13

postconviction counsel's failure to raise a *Crawford* argument does not constitute deficient performance under the *Strickland* standard. The state may be able to make a persuasive argument that Ramirez was not prejudiced by counsel's failure to make a *Crawford* argument, particularly with respect to the charges arising from the September 1999 incident for which DNA evidence linked Ramirez to the victim. On the other hand, without the victim's out-of-court statements blaming Ramirez for her November 1998 injury, it appears there would be little evidence linking Ramirez to that incident. Because the state relied entirely on the court of appeals' conclusion that *Crawford* did not apply to Ramirez's case, the state has failed to address these significant questions. Because these questions must be considered before I decide whether Ramirez is entitled to habeas relief, I will give the state an opportunity to address the merits of Ramirez's claim.

**C. Appointment of counsel**

Finally, I will appoint counsel to represent Ramirez for the remainder of this case. Because Ramirez qualified for a public defender during his state-court proceedings and has been in prison for several years, I assume he is financially eligible for appointment. In light of the potential merit of his claim and the potential complex legal or factual arguments that the state may raise, I conclude that the appointment of counsel would serve the interests of justice. 18 U.S.C. § 3006A. Once the court finds counsel to represent Ramirez, I will direct counsel to file a reply to the state's supplemental briefing.

ORDER

IT IS ORDERED that:

1. Petitioner Antonio Ramirez's motion to expand the record, Dkt. 27, is GRANTED.

2. Respondent has until December 21, 2018 to show cause why petitioner is not entitled to relief on his claim that postconviction counsel was ineffective for failing to raise a confrontation clause argument under *Crawford v. Washington*, 541 U.S. 36 (2004).

3. The court will appoint counsel to represent petitioner for the remainder of these proceedings. Once counsel is appointed, the court will set a deadline by which petitioner may file a reply in support of his petition.

Entered November 29, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge